## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HANOVER INSURANCE | : | |
| COMPANY, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 06-2650 |
| | : | |
| KENNETH RYAN, et al., | : | |
| Defendants | : | |

### M E M O R A N D U M

**STENGEL, J.**                                                    **December 17, 2007**

This declaratory judgment action is one of two lawsuits arising from a November
5, 2004 accident, which resulted in the deaths of Cathryn Ryan and Judith Weinsteiger.
The first was brought by Judith's husband, Leonard Weinsteiger, in the Court of Common
Pleas of Berks County, against the Estate of Cathryn Ryan.  In the second action, before
this court, Hanover Insurance Company seeks a declaration that it has no obligation to
defend or indemnify Kenneth Ryan in the underlying tort case.  Hanover named both its
insured, Kenneth Ryan, and the injured party, Leonard Weinsteiger, as defendants in this
case.[1]  Ryan filed counterclaims against Hanover seeking his own declaratory relief, as
well as damages for breach of contract, bad faith, and intentional and negligent
misrepresentation.  Hanover has moved to dismiss the counterclaims, and to strike the
counterclaim for declaratory relief as duplicative of Hanover's own such claim.  For the

---

[1]Mr. Ryan and Mr. Weinsteiger are each sued as administrators of the estates of their wives, each
of whom died as a result of injuries sustained in the accident.

1

reasons discussed below, I grant the motion only as to (1) the claim for punitive damages for breach of contract, and (2) Ryan's counterclaims for intentional and negligent misrepresentation.

## I.    BACKGROUND

On November 5, 2004, a collision occurred between a Ford pickup truck driven by Cathryn Ryan and a Chevrolet Sport Van owned by Quigley Bus Services driven by Judith Weinsteiger in Douglass Township, Berks County, Pennsylvania.

Mrs. Ryan was operating a home day care facility and was allegedly en route to pick up and transport one of the children enrolled in the facility.  At the time of the accident, Mrs. Ryan was legally intoxicated with a blood alcohol level measured at .29%. Her truck, which was seen traveling in an erratic manner, crossed into the other side of the highway and struck the Chevy Sport Van.  Mrs. Ryan died as a result of her injuries. Mrs. Weinsteiger sustained serious bodily injuries, and died months later.

Before the accident, Hanover issued a personal umbrella policy to Kenneth and Cathryn Ryan.  The policy afforded up to $1 million worth of coverage, in excess of the primary limit, for any bodily injury for which the Ryans were legally liable.[2]  The policy specifically excluded any liability arising from the provision of home day care services. After an investigation, Hanover concluded that the accident and any resulting claims fell

_____

[2]  The Ryans' vehicle was insured by Nationwide Mutual Insurance Company.  Mr. Weinsteiger filed a claim for damages with Nationwide for recovery in tort.  Nationwide tendered to Mr. Weinsteiger the limits of liability coverage under the personal auto policy issued to the Ryans.

entirely within the home day care exclusion.  Hanover then issued a disclaimer of coverage.

On March 28, 2006, Mr. Weinsteiger filed wrongful death and survivor claims against Mr. Ryan in Berks County.  After receiving the Weinsteiger's complaint, Hanover issued another disclaimer of coverage, and advised Mr. Ryan that Hanover would continue to deny coverage for any claims arising out of the November 5, 2004 car accident.

On June 19, 2006, Hanover filed the present suit, seeking a declaration that it had no obligation to defend or indemnify Mr. Ryan, individually or as administrator of his wife's estate, or any other individual or entity, with regard to any claim in the underlying action, or any other ensuing action.  Mr. Ryan filed an answer to Hanover's complaint on May 4, 2007, asserting four counterclaims for: (1) declaratory relief, (2) breach of contract, (3) bad faith, and, (4) intentional and negligent misrepresentation.  On May 24, 2007, Hanover moved to dismiss and/or strike Mr. Ryan's counterclaims; Mr. Ryan responded to Hanover's motion on June 21, 2007.

## II.   LEGAL STANDARDS

### A.     Motion to Strike

Under Federal Rule of Civil Procedure 12(f), a court may order stricken any portion of a pleading that constitutes "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).  Motions to strike

are decided on the pleadings alone, and should not be granted unless the relevant insufficiency is "clearly apparent."  Cipollone v. Liggett Group, Inc., 789 F.2d 181, 188 (3d Cir. 1986); see North Penn Transfer, Inc. v. Victaulic Company of America, 859 F. Supp. 154, 158 (E.D. Pa. 1994) (motions to strike decided on the pleadings alone).

While motions to strike serve the useful function of streamlining litigation, they are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties."  Id. (citing C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE 1382 (1969)); see also McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) ("The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters").  In particular, courts have identified prejudice to one or more of the parties as a touchstone for deciding a motion to strike. See, e.g., Miller v. Group Voyagers, Inc., 912 F. Supp. 164, 168 (E.D. Pa. 1996).

Finally, although courts exercise considerable discretion in deciding motions to strike, the 12(f) prohibition on "redundant" pleadings "must be read in conjunction with the liberal pleading standards of Rule 8 in general and Rule 8(e)(2) in particular" (under which parties may plead alternative theories of relief).  Calloway Golf Company v. Dunlop Slazenger Group Americas, Inc. d/b/a Maxfli, 295 F. Supp. 2d 430, 438 (D. Del. 2003); see also Miller, 912 F. Supp. at 168 (noting the discretion afforded in deciding motions to strike), North Penn, 859 F. Supp. at 158 (same).

        B.      Motion to Dismiss

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept the complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor.  Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1164-65 (3d Cir. 1987).

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  The rule is designed to screen out cases where "a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted."  Port Auth. v. Arcadian Corp., 189 F.3d 305, 311-12 (3d Cir. 1999).  A complaint should not be dismissed on a 12(b)(6) motion if the claim is adequately stated and if the factual allegations raise a right to relief "above the speculative level."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).  "A well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely."  Id. (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (internal quotations omitted)).  The issue, therefore, is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer further evidence to support its claims.  Scheuer, 416 U.S. at 236; see also Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

In a 12(b)(6) motion, courts generally consider the allegations contained in the complaint, exhibits attached to the complaint, and public records of which the court may

5

take judicial notice.  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III.   DISCUSSION

### A.     Choice of Law

A federal court sitting in a diversity action "must apply the choice of law rules of the forum state to determine what substantive law will govern."  Huber v. Taylor, 469 F.3d 67, 73 (3d Cir. 2006) (quoting Klaxon Company v. Stentor Electric Manufacturing Company, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)).  Both federal and state courts in Pennsylvania, however, have long labored in a state of uncertainty as to the proper test for determining the applicable law in contracts cases.  See, e.g., Hammersmith v. TIG Insurance Company, 480 F.3d 220, 226-27 (3d Cir. 2007); Foremost Insurance, Company v. Erickson, et al., No. 07-0195, 2007 U.S. Dist. LEXIS 58017, at *7 (E.D. Pa. Aug. 7, 2007).  Therefore, before turning to the substantive issues raised on this motion to dismiss and/or strike Ryan's counterclaims, it is necessary to determine the appropriate choice of law rule to apply, and its application to the present case.

In Griffith v. United Air Lines Inc., 203 A.2d 796 (Pa. 1964), the Pennsylvania Supreme Court abandoned the "lex loci delicti" rule in tort cases "in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issues before the court."  Id. at 805.  Whereas the Griffith rule clearly applies in tort cases, the Pennsylvania Supreme Court has not explicitly extended the approach to choice

of law questions in contracts cases, traditionally governed by the "lex loci contractus" rule, which holds that the place of formation, most often the place of delivery, supplies the law of the case.  See Hammersmith, 480 F.3d at 227; Foremost, 2007 U.S. Dist. LEXIS 58017, at *8 n.3 ("The lex loci rule requires application of the substantive law of the state in which the contract was delivered") (citing authorities); see also Crawford v. Manhattan Life Insurance Company of New York, 221 A.2d 877, 880 (Pa. Super. 1966); Peele v. Atlantic Express Transp. Group, 840 A.2d 1008, 1011 (Pa. Super. 2003) ("[U]nder well-settled Pennsylvania insurance contract law, the law of the state where the policy was delivered is the law applied in construing its terms").

Recently a number of federal and state courts have concluded that the Griffith rule now applies in contract cases.  See especially, Melville v. American Home Assurance Company, 584 F.2d 1306, 1313 (3d Cir. 1978) (predicting that "Pennsylvania [would] extend its Griffith conflicts methodology to contracts actions"), Hammersmith, 480 F.3d at 228 (affirming the prediction in Melville, noting the "overwhelming weight of authority" in favor of this analysis), Budtel Associates, LP, et al. v. Continental Casualty Company, 915 A.2d 640, 644-45 (Pa. Super. 2006) (collecting authorities on either side of the split, and favoring the Griffith rule).  Furthermore, as the Pennsylvania Superior Court reasoned in Budtel, the lex loci rule may be "fairly subsumed by the more comprehensive Griffith rule" in the context of an ongoing contractual relationship, where the place of delivery is one factor among many for the court to consider in determining

the appropriate law to apply.  See Budtel, 915 A.2d at 645.

It is clear that the Griffith rule governs choice of law questions in Pennsylvania contracts cases.[3]  Under Griffith and its progeny, the court performs a  flexible, two-step interests/contacts analysis.  See Hammersmith, 480 F.3d at 231-35; Budtel, 915 A.2d at 644; Foremost, 2007 U.S. Dist. LEXIS 58017, at *8.[4]  The first step is to determine if a conflict exists between the laws of competing states.  Foremost, 2007 U.S. Dist. LEXIS 58071, at *8.  The conflict must not be a "false conflict," which occurs when "the various laws that might be applied to the case do not differ on the relevant issue."  Coons v. Lawlor, 804 F.2d 28, 30 (3d Cir. 1986); see also LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996); Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 813 (3d Cir. 1994) ("Where there is no difference between the laws of the forum state and those of the foreign jurisdiction, there is a 'false conflict' and the court need not decide the choice of

---

[3]Notwithstanding the decision to apply Griffith in this case, it is important to note that the case at hand illustrates the unnecessarily thorny issues that can arise under the lex loci rule.  As Hanover correctly argues, the insurance policy submitted by both parties indicates that Mr. Ryan had a New York address at the time of delivery.  (See Ryan Ans. Ex. A; Hanover Br. Ex. A, Part 2.)  Ryan submits, both in his answer and in his brief in opposition to the present motion, that the original policy was renewed at a time when he neither resided nor maintained an address in New York–making delivery there impossible.  (See Ryan Ans. ¶ 8; Ryan Br., at 9.)  Ryan further claims that he is unable to locate the renewal policy.  (See Ryan Br., at 3.)  To support his position, Ryan argues that Pennsylvania courts have ruled that renewal creates a "new" contract, and that because the renewal occurred two days before the subject accident, delivery must have taken place in Pennsylvania. (See Ryan Br., at 9.)  Rather than making arcane administrative contingencies such as these determinative, analysis under Griffith is more comprehensive, leading to a more suitable fit between the dispute and the applicable law.

[4]The applicability of Griffith in the present matter is further supported by the fact that several of the counterclaims at issue sound in tort or, in the case of Pennsylvania's bad faith cause of action, are created by statute.  See, e.g., Asplundh Tree Expert Company, et al. v. Pacific Employers Insurance Company,  No. 90-6976, 1991 U.S. Dist. Lexis 10465 (E.D. Pa. 1991) (addressing both breach of contract and bad faith claims under Griffith).

law issue.")[5]  Next, if a conflict is found, the court must weigh the interests of each state

in the resolution of the dispute, and determine which state has greater contacts with the

dispute.[6]  Id.

The same set of facts gives rise to each of Ryan's counterclaims; however, the

parties appear to spar principally over the proper law to be applied to Ryan's bad faith

claim.  (See Hanover Br. at 10; Ryan Br. at 13 ("Hanover's position is that under New

York law in order to establish a prima facie case for bad faith, the insured must establish

that the insured's conduct constituted a 'gross disregard' of the insured's interest.").)  See

also Asplundh Tree Expert Company, et al. v. Pacific Employers Insurance Company, No.

90-6976, 1991 U.S. Dist. Lexis 10465 (E.D. Pa. 1991) (declining to bifurcate the choice

of law analysis where the same facts gave rise to both the breach of contract and the bad

faith conduct); but see Thomson v. Prudential Property & Casualty Insurance Company,

---

[5]The case law on the definition of a "false conflict" is also in a state of disarray.  As Judge
Baylson explains in Hammersmith, one line of cases suggests that a "false conflict" occurs where the
laws of each state are equivalent; in which case, "the court does not have to engage in a choice of law
analysis, and may refer to the states' laws interchangeably."  480 F.3d at 229 (collecting authorities).
Another line of cases requires that the "governmental interests would be impaired by the application of
the other jurisdiction's laws."  Id. at 229-30.  The issue is not presented by the circumstances of this case
where, as discussed below, a "true conflict" does exist between the laws of Pennsylvania and New York
with respect to bad faith claims.  Id. at 230.

[6]The "flexible" Griffith test combines an "interest analysis" with the rule imposed by the
Restatement (Second) of Conflict of Laws, focusing on contacts between the dispute and the competing
states.  See Griffith, 203 A.2d at 802-06 (1964); Melville, 584 F.2d at 1313.  Under the Restatement test,
the factors considered in determining the state with the most significant relationship include the place of
the injury, the place of conduct, domicile of the parties and the place where the relationship between the
parties is centered.  See RESTATEMENT (SECOND) OF THE CONFLICT OF LAWS § 6, cmt. (c) (1971).  The
Griffith analysis "takes into account both the grouping of contacts with the various concerned
jurisdictions and the interests and policies that may be validly asserted by each jurisdiction."  Melville,
584 F.2d at 1311.

9

No. 91-4073, 1992 U.S. Dist. LEXIS 1980, at *10 (E.D. Pa. Feb. 20, 1992) (holding the

Pennsylvania plaintiff's bad faith and intentional infliction of emotional distress claims

were distinct from the declaratory judgment action seeking interpretation of a New Jersey

contract).[7]  Under the first prong of the Griffith analysis, a conflict does exist between the

bad faith standards in Pennsylvania and New York.  See General Star National Insurance

Company v. Liberty Mutual Insurance Company, 960 F.2d 377, 385 (3d Cir. 1992)

(recognizing the conflict); see also Kilmer v. Connecticut Indemnity Company, 189 F.

Supp. 2d 237, 244 (M.D. Pa. 2002).[8]  Thus, it is necessary to move to the second prong of

the Griffith analysis: a weighing of the state interests and contacts in the present case.

Hanover argues that New York has the most significant contacts with this case,

and the most interest in the enforcement of the insurance contract at issue.  The contacts

---

[7]The Third Circuit has held that the laws of separate states may be applicable to distinct issues. Robeson Industries Corporation v. Hartford Accident & Indemnity Company, 178 F.3d 160, 168 (3d Cir. 1999) (involving New Jersey choice of law).  Though the issue is not presented by Hanover's motion to strike Ryan's counterclaim for declaratory relief, no conflict exists between New York and Pennsylvania law regarding the interpretation of insurance contracts.  Compare Federal Insurance Company v. Continental Casualty Company, No. 05-305, 2006 U.S. Dist. LEXIS 85323, at *55 (W.D. Pa. Nov. 22, 2006) (describing the Pennsylvania Supreme Court's approach to interpretation of insurance contracts) with Parks Real Estate Purchasing Group, et al. v. St. Paul Fire and Marine Insurance Company, 472 F.3d 33, 42 (describing insurance contract interpretation principles under New York law).

[8]There is no common law theory of tortious bad faith in Pennsylvania.  D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company, 431 A.2d 966 (Pa. 1981) (affirming lower court's dismissal of request for punitive damages, not among the available remedies of Pennsylvania's statutory bad faith claim under the Unfair Insurance Practices Act).  In brief, Pennsylvania law requires a lower showing to make out a case of bad faith relative to New York law.  See Kilmer, 189 F. Supp. 2d at 244.  "Under Pennsylvania law, . . . the insured must show, by clear and convincing evidence, that the insurer did not have a reasonable basis in denying the claim.  Id.  Meanwhile, under New York law, "bad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract."  Id. quoting Gordon v. Nationwide Insurance Company, 334 N.Y.S. 2d 301, 608 (1972), cert. denied, 410 U.S. 931 (1973).

cited by Hanover include:

(1)     the insureds, the Ryans, were domiciled in New York at the time the
        insurance contract was entered into;
(2)     Ryan's New York address was placed on the declaration sheet of the
        insurance contract;
(3)     the insurance contract was issued in New York;
(4)     the insurance contract was delivered in New York;
(5)     the agent through whom the insurance contract was issued is located in New
        York;
(6)     the premium was paid in New York; and
(7)     the insurance contract contains New York endorsements.

(Hanover Br. at 6-7.)  Hanover further argues that New York has a substantial interest in

the insurance contracts purchased by its residents.  Id. (citing Melville, 584 F.2d at 1313-

14 ("[A] state has a significant interest in prescribing the standards that will govern the

insurance contracts purchased by its residents to ensure that the insured and their

beneficiaries will be accorded the coverage deemed adequate by the state.")).[9]

        Ryan, on the other hand, asserts the following facts to support the application of

Pennsylvania law to this case:

(1)     Ryan relocated to the Commonwealth of Pennsylvania in July of 2004, and
        notified Hanover to that effect;
(2)     the vehicle operated by Cathryn Ryan on November 5, 2004 was registered
        in Pennsylvania, where the accident occurred;
(3)     a renewal of the Hanover umbrella policy occurred two days prior to the
        accident, on November 3, 2004, while the Ryans were domiciled in
        Pennsylvania and had no address in New York; and
(4)     Hanover denied benefits based on the Ryans' operation of a home day care
        facility located in Pennsylvania.

---

[9]Because Mr. Ryan's residence is in dispute on this motion to dismiss, the interest argument
advanced by Hanover will only carry weight if the court finds that Ryan was indeed a resident of New
York at all times relevant to the choice of law determination, see below.

(Ryan Br., at 3-4, 9.)  Under the "interests" component of the <u>Griffith</u> test, Ryan's

assertion that he was a resident of Pennsylvania, and not New York, raises the same

argument advanced by Hanover in support of its contention that New York law should

apply.  Namely, courts have accorded considerable weight to the state's ability to protect

its insureds and their beneficiaries against the unreasonable denial of benefits.  <u>See, e.g.</u>,

<u>General Star</u>, 960 F.2d at 379 ("[T]he protection of insured parties is the primary public

policy behind laws governing duties owed from unreasonable denial of benefits");

<u>Kilmer</u>, 189 F. Supp. 2d at 245-46 (applying Pennsylvania law where aggrieved parties

were Pennsylvania residents); <u>Asplundh</u>, 1991 U.S. Dist. 10465, at *26 ("[A] state has a

significant interest in prescribing the standards that will govern the insurance contracts

purchased by its residents . . . .").

At this stage, the court must resolve all factual issues in the light most favorable to

the non-moving party.  <u>Zimmerman</u>, 834 F.2d at 1164-65.  Accepting as true Ryan's

claim that the umbrella policy was renewed before the November 5, 2004 accident, when

the Ryans were Pennsylvania residents, and that Mr. Ryan had notified Hanover of the

July, 2004 move to Pennsylvania, it is clear that Pennsylvania has more contacts with

Ryan's counterclaims, and a greater interest than New York in having its law applied to

resolve the dispute.[10]

---

[10]It is impossible to determine from the record whether the policy in question is a discreet
contract or a renewed policy; nor can the legal effect of any renewal under a previous policy be finally
determined without further facts regarding the terms of earlier policy documents.  The record contains a
policy for coverage between November 3, 2004 and November 3, 2005.  Attached as an addendum to that

Under Ryan's version of the facts, the contacts between this case and Pennsylvania are substantial: (1) the Ryans were residents and domiciliaries of Pennsylvania, both at the time of the contract, and at the time of the denial of benefits; (2) the only possible place of delivery is Pennsylvania, if Ryan no longer possessed a New York address at the time the contract was made;[11] (3) the denial related directly to an exclusion based on Ryan's operation of a business in Pennsylvania; (4) Hanover had been notified of the Ryans' relocation to Pennsylvania well in advance of both the making of the contract and the accident that is the subject of the underlying tort claim, and issued the policy to Mr. Ryan as a Pennsylvania resident.[12]   The fact that Hanover failed to update its record of

_____

policy is a non-renewal clause that states:

> If we [Hanover] decide not to renew or continue this policy, we will (subject to the laws of New York) mail notice to the named insured shown in the Declarations.  This notice will be mailed at least 45 but not more than 60 days in advance of the end of the policy period.  The specific reason for nonrenewal will be stated in or shall accompany the notice.

(See Ryan Ans. Ex. A.)  While Ryan admits to purchasing other insurance policies from Hanover through a New York address, the court is unable to review the terms of these policies to determine if the 2004-05 policy is a continuation of a previous contract, or a new contract altogether.  Even if the policy in the record were considered a renewal, the renewed policy may constitute a new contract.  See Benat v. Mutual Benefit Health and Accident Ass'n, 159 A.2d 23 (1960), aff'd 166 A.2d 880 (1961) (holding that an insurer's acceptance of new premiums created a new contract, where the insurer could terminate a quarterly policy by not accepting such premiums).  However, based on the record before it, the court must consider the policy as an independent contract for coverage between November 3, 2004 and November 3, 2005.

[11]Again, on a motion to dismiss, Ryan's assertion of the fact that the policy was renewed, and the date of that renewal, must be accepted as true.  The submissions of the parties do not provide the court with adequate information to resolve the choice of law question presented under these facts with any degree of finality.  Upon further discovery on this issue, the court will be in a position to evaluate more fully the contacts involved.

[12]While the "Amendment of Policy Provisions," discussed above in n.9, refers to New York law and includes New York in the title of the document, it is clear from the main policy that Hanover anticipated that residents of other states would purchase this policy.  The umbrella policy contains a "conformity to state statute" clause stating: "If any of the provisions of this policy are in conflict with the

Mr. Ryan's address should not determine the law applied to the claims under consideration.  That Hanover based the denial of benefits at the core of Ryan's counterclaims on an exclusion clause in the subject policy for the operation of home daycare facilities is likewise compelling.  The "home" implied by Hanover's act of denial is indisputably located in Pennsylvania.

As the court acknowledged in Continental Casualty, it is proper to look to "the place where the failure to receive the allegedly expected benefits was felt" in determining the appropriate law to apply under Griffith.  844 F. Supp. at 951 (citing RESTATEMENT (SECOND) OF CONFLICTS, § 145, cmt. e: "persons who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that state"); see also Celebre v. Windsor-Mount Joy Mutual Insurance Company, No. 93-5212, 1994 U.S. Dist. LEXIS 409 (applying New Jersey law where the insured risk was located in New Jersey, despite the fact that the decision to deny benefits took place in Pennsylvania).  Furthermore, Pennsylvania, by enacting the Unfair Insurance Practices Act, 40 P.S. §§ 1171 et seq., has demonstrated its interest in protecting Pennsylvania insureds against the conduct alleged in Ryan's counterclaims.  See Continental Casualty, 884 F. Supp. at 951 (citing Melville, 584 F.2d at 1313-14).  Indeed, in General Star, the Third Circuit announced that the protection of insureds is the primary public policy underlying such laws.  960 F.2d at 379.

---

laws of the state in which you reside, this policy is amended to conform to the requirements of those laws."  (Ryan Ans. Ex. A, at 17.)  Thus, it may be said from the terms of the policy that both parties were on notice of the applicability of another state's laws.  At this stage, again, the court must resolve factual issues in the light most favorable to Mr. Ryan.

While New York may have an interest in the present matter because Hanover is a New York corporation, and because of Ryan's New York address on the policy, a closer examination of the facts as presented to the court at this time suggests that Pennsylvania's contacts and interest in this case outweigh those of New York.

Accordingly, for the purpose of resolving this motion to dismiss and/or strike Ryan's counterclaims, I will apply Pennsylvania law.

B.     Hanover's Motion to Strike Ryan's Counterclaim for Declaratory Relief

A motion to strike should only be granted in limited circumstances; these motions are drastic measures in light of the liberal pleading requirements under the Federal Rules, and are generally not favored.  See Callaway Golf, 295 F. Supp. 2d at 438; North Penn, 859 F. Supp. at 158.  At this stage, striking Ryan's counterclaim for declaratory relief would be premature.  While it is true that a disposition on Hanover's original declaratory action may resolve Ryan's counterclaim as well, nothing at this stage of litigation prevents Hanover from withdrawing its federal action for declaratory relief.  Finally, as Ryan argues, declaratory judgment claims are "susceptible to judicial resolution as a matter of law," and thus striking Ryan's counterclaim would not have the practical effect of streamlining the pleadings.  (See Ryan Br. at 15.)

C.     Counterclaim for Breach of Contract

To state a valid claim for breach of contract, a plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the

contract[,] and (3) resultant damages."[13] <u>Chemtech International Inc. v. Chemical</u>

<u>Injection Technologies, Inc.</u>, No. 06-3345, 2007 U.S. App. LEXIS 21697, at *4-*5 (3d

Cir. Sept. 10, 2007), quoting <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 225 (3d Cir. 2003)

(quoting <u>CoreStates Bank, N.A. v. Cutillo</u>, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

An enforceable contract exists where the parties reached a mutual agreement, exchanged

consideration, and set forth the terms of their bargain with sufficient clarity.  <u>See</u> <u>Biddle</u>

<u>v. Johnsonbaugh</u>, 664 A.2d 159, 163 (Pa. Super. Ct. 1995).

 Hanover essentially argues that Ryan's claim for breach of contract should fail

because he has suffered no damages.  Ryan's motor vehicle insurance, Nationwide, has

been providing for his defense in the underlying action.  At this time, it is too early to rule

out the possibility that Ryan could state a viable claim for compensatory relief on a breach

of contract theory.  This is particularly true in light of the fact that Hanover has instituted

litigation in order to establish its lack of liability to indemnify Ryan in the underlying tort

action.  If evidentiary deficiencies remain following further discovery on the issue of

damages, Hanover may move for summary judgment on the breach of contract

counterclaim.  <u>See</u> <u>McCrory v. State Farm Mutual Automobile Insurance Company</u>, No.

07-0039, 2007 U.S. Dist. LEXIS 20981 (W.D. Pa. Mar. 21, 2007) (refusing to dismiss

breach of contract claim based on unreasonable denial of benefits).

 However, Ryan's demand for punitive damages flowing from the breach of

---

[13]The elements of a breach of contract claim are identical under New York law.  <u>See</u> <u>WorldCom</u>
<u>v. Sandoval</u>, 701 N.Y.S. 2d 834 (1999).

contract claim is improper.  "The law [in Pennsylvania] is clear that punitive damages cannot be recovered merely for breach of contract."  Baker v. Pennsylvania National Mutual Casualty Insurance Company, 536 A.2d 1357, 1361 (Pa. Super. 1988); see also Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392, 402 (3d. Cir. 2004) (same). I will therefore grant Hanover's motion to dismiss with respect to the request for punitive damages in connection with Ryan's breach of contract claim.

### D.    Counterclaim for Bad Faith

There is no common law remedy in Pennsylvania for a claim of bad faith against insurers.  D'Ambrosio, 431 A.2d at 970.  Rather, a statutory remedy exists whereby a court, after finding an insurer has acted in bad faith toward an insured, may take all of the following actions:

> (1)    Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2)    Award punitive damages against the insurer.
> (3)    Assess court costs and attorney fees against the insurer.

42 Pa. C.S.A. § 8371.  In order to state a claim for bad faith under § 8371, the plaintiff must plead allegations and facts indicating that the insurer "(1) did not have a reasonable basis for its actions and (2) knew or recklessly disregarded its lack of a reasonable basis for its actions."  Kojeszewski v. Infinity Insurance Company, No. 06-1261, 2006 U.S. Dist. LEXIS 79306, at *9 (M.D. Pa. October 31, 2006) (citing Terletsky v. Prudential Property & Casualty Insurance Company, 649 A.2d 680, 688 (Pa. Super. 1994)).  "Mere

17

negligence or bad judgment is not bad faith."  Woody v. State Farm Fire & Cas. Co., 965

F. Supp. 691, 693 (E.D. Pa. 2004) (citing Polselli v. Nationwide Mut. Fire Ins. Co., 23

F.3d 747, 751 (3d Cir. 1994) (citing BLACK'S LAW DICTIONARY 139 (6th ed. 1990))).  The

concept of bad faith also encompasses a "duty of good faith and fair dealing."  Woody,

965 F. Supp. at 692.

    Section 8371 does not define the specific acts that would establish "bad faith

toward the insured," but courts have subsequently determined several actions to constitute

bad faith, including: (1) a frivolous or unfounded refusal to pay; (2) a failure to

investigate into the facts; or (3) a failure to communicate with the insured.  Livornese v.

Medical Protective Co., 219 F. Supp. 2d 645, 647 (E.D. Pa. 2002); see Frog, Switch Mfg.

Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999).  Courts likewise will

broadly construe Section 8371 "to effectuate the purpose of the statute."  Meyer v. CUNA

Mut. Group, No. 03-602, 2007 U.S. Dist. LEXIS 72833 ( M.D. Pa. Sept. 28, 2007) (citing

Krisa v. Equitable Life Assur. Soc., 109 F. Supp.2d 316, 318 (M.D. Pa. 2000)).

    Ryan's counterclaim for bad faith is predicated largely on the corresponding duty

of good faith and fair dealing required of insurers under § 8371.  Id.; (Ryan Ans. at ¶¶ 54-

57.)  In the course of litigation, according to Ryan's counterclaim, Hanover entered a

default judgment against Ryan, its own insured, without notice to Ryan's counsel, and

refused this court's offer to open or strike the judgment.  (See Ryan Ans. at ¶¶ 22-23.)

Ryan further alleges that Hanover failed to properly investigate the factual and legal basis

for its denial of coverage.  Accepting these facts as true, the actions of Hanover could

constitute bad faith under § 8371, especially given Hanover's failure to communicate with

its insured regarding the entry of a default judgment in the present case.  Ryan has

therefore stated a viable claim for bad faith, and I will deny Hanover's motion to dismiss

with respect to this claim.[14]

### E.      Counterclaims for Intentional and Negligent Misrepresentation

Ryan's fourth counterclaim, for intentional and negligent misrepresentation,

should be dismissed for failure to state a claim.  Ryan has failed to plead facts that would

support a claim under either heading, nor has he pleaded these claims with the heightened

particularity required under Federal Rule of Civil Procedure 9(b).  Each of Ryan's

misrepresentation claims is discussed separately below.

### 1.      Intentional Misrepresentation

Under Pennsylvania law, to establish intentional misrepresentation, the plaintiff

must show:

> (1)    A representation
> (2)    which is material to the transaction at hand;
> (3)    made falsely, with knowledge of its falsity or recklessness as to
>        whether it is true or false;
> (4)    with the intent of misleading another into relying on it;
> (5)    justifiable reliance on the misrepresentation; and,
> (6)    the resulting injury was proximately caused by the reliance.

---

[14]Ryan's claim for punitive damages in connection with his bad faith claim is proper, as punitive damages are included among the possible remedies under the Pennsylvania bad faith statute.  See 42 Pa. C.S.A. § 8371.

Heritage Surveyors & Engineers, Inc. V. National Penn Bank, 801 A.2d 1248, 1250-51 (Pa. 2002).  Federal Rule of Civil Procedure 9(b) further requires that all averments of fraud be stated with particularity.  See FED. R. CIV. P. 9(b).  To satisfy Rule 9(b), plaintiffs must plead with particularity the "circumstances" of the alleged fraud, "in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984), cert. denied, 469 U.S. 1211 (1985).  "As long as there is some precision and some measure of substantiation in the pleadings, the rule will be satisfied."  Killian v. McCulloch, 850 F. Supp. 1239, 1254 (E.D. Pa. 1994).

Ryan's counterclaim fails to put Hanover on notice of any specific behavior that would constitute intentional misrepresentation under Pennsylvania law.  In his counterclaim, Ryan merely alleges that Hanover "misrepresent[ed] that there was no coverage under the policy."  (Ryan Ans. at ¶ 61.)[15]  The actions described in Ryan's counterclaim, however, amount to a claim that a denial of coverage alone can be an act of intentional misrepresentation whenever the insured disagrees with the insurer's interpretation of the insurance contract.  Even accepting as true Ryan's general allegation

---

[15]In his response to Hanover's motion to dismiss, Ryan asserts, with more specificity, that Hanover made materially false representations on two occasions: (1) Hanover misrepresented the existence of coverage under the umbrella policy; and (2) Hanover misrepresented that coverage did not exist under the policy.  (See Ryan Br. at 15-16.)  However, under Rule 9(b), such specific acts must be included in the pleadings themselves.  Regardless of the pleading requirements under 9(b), these two allegations would not constitute acts of misrepresentation, and Ryan's counterclaims should fail.

of intent to defraud, which Rule 9(b) allows, that Hanover would then bring a declaratory action to support its interpretation exhibits the opposite intent.  See FED. R. CIV. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally.")  Furthermore, Ryan has failed to plead specific facts indicating his own justifiable reliance on the purported misrepresentation; on the contrary, Ryan counterclaimed for a declaration that he is, in fact, covered under the umbrella policy.  I therefore dismiss Ryan's counterclaim for intentional misrepresentation.

    2.    <u>Negligent Misrepresentation</u>

To state a claim for negligent misrepresentation, Ryan must show:

(1)    a misrepresentation of a material fact;

(2)    that the misrepresentor either knew of the misrepresentation, made the misrepresentation without knowledge as to its truth or falsity, or made the representation under circumstances in which he or she ought to have known of its falsity;

(3)    that the representor intended the representation to induce another to act on it; and

(4)    that injury resulted to the party acting in justifiable reliance on the misrepresentation.

<u>Gibbs v. Ernst</u>, 647 A.2d 882, 890 (Pa. 1994).  The particularity requirement of Rule 9(b) applies to claims of negligent misrepresentation.  See FED. R. CIV. P. 9(b).  In this case, Ryan has failed to plead specific facts indicating a misrepresentation by Hanover, nor has he properly pleaded facts to show his own reliance on any such misrepresentation.  I therefore dismiss Ryan's counterclaim for negligent misrepresentation.

**IV.**   **CONCLUSION**

In light of the above, I will grant Hanover's motion to dismiss and/or strike Ryan's counterclaims with respect to Ryan's improper request for punitive damages in his breach of contract counterclaim, and his misrepresentation claims, denying the motion with respect to the rest of Ryan's counterclaims.  An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HANOVER INSURANCE | : | |
| COMPANY, | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 06-2650** |
| | : | |
| KENNETH RYAN, et al., | : | |
| **Defendants** | : | |

## O R D E R

**STENGEL, J.**

**AND NOW**, this 17th day of December, 2007, upon consideration of Hanover's motion to dismiss Ryan's counterclaims (Document #40), it is hereby **ORDERED** that the motion is **GRANTED**, in part, and **DENIED**, in part.  The motion to dismiss is **GRANTED** with respect to (1) Ryan's request for punitive damages in his counterclaim for breach of contract, and (2) Ryan's intentional and negligent misrepresentation counterclaims.  The motion to dismiss is **DENIED** with respect to (1) Ryan's counterclaim for declaratory relief, and (2) Ryan's counterclaim for breach of contract.

BY THE COURT:


   /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.